1   JEAN BARANOWSKI
    PRO PER
2   78-365 Highway 111, Ste. 123
    La Quinta, CA 92253
3   760-333-7499
    Fax Number:  None
4   Email:  support@moneywiser.com

5
    JEAN BARANOWSKI, IN PRO PER
6

7

8
                    UNITED SATES BANKRUPTCY COURT
9
          CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION
10

11
    In re:                              )  Case No.: 6125-BK-11843-Y
12                                       )
    Taurean E. Wright                    )
13                                       )  **OBJECTION TO CONFIRMATION OF**
                    Debtor               )  **DEBTOR'S CHAPTER 13 PLAN OF**
14                                       )  **REORGANIZATION AND ONTECTION**
                                         )  **TO ORDER IMPOSING A STAY OR**
15                                       )  **CONTINUING THE AUTOMATIC STAY**
                                         )  **AS TO 107 Cachanilla Court, Palm Desert,**
16                                       )  **CA 92253 SHOWN IN BANKRUPTCY**
                                         )  **FILING OF TAUREEN WRIGHT**
17                                       )
                                         )  **SUBJECT PROPERTY:**
18                                       )  **107 Cachanilla Ct.**
                                         )  **Palm Desert, California 92260 .**
19                                       )
                                         )  **DATE:  May 27, 2025**
20                                          **TIME:  1:30 PM**
                                            **PLACE:  1420 Twelfth Street, Riverside,**
21                                          **CA 82501**
                                            **CTRM: 302**
22                                          **JUDGE:    Scott H. Yun**

23

24                                          Action Filed:  March 25 2025
                                            Trial Date:    May 27, 2025
25
    _____
26   JEAN BARANOWSKI, Pro Per, hereby objects to confirmation of the Chapter 13 Plan filed by the
27   Debtor in the above-referenced matter. Jean Baranowski also objects to the Debtor's Motion for
     Imposing a Stay or Continuing the Automatic Stay ("Motion to Impose Stay"). This Opposition to
28
                                            - 1 -
    **OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGNAIZATION**

Debtor's Chapter 13 Plan of Reorganization and Motion to Impose Stay is supported by the facts herein below, points and authorities cited herein and the record currently before the Court. The basis of the objections are stated below:

## I. STATEMENT OF FACTS

1. On or about December 2020 , Debtor executed a lease to rent property at 107 Cachanilla Court, Palm Desert, CA 92260..Debtor needed a place to stay

2. On or about February 2, 2021 Taurean Wright, Debtor, took occupancy of 107 Cachanilla Court.Lease 2/1/2021 – 2/2/2022 **EXHIBIT 1**

3. Debtor remains in residence to this date, though he only made monthly rental payments to around 12/01/2022, at which time he intentionally quit paying rent, debtors devious acts and motives causing Baranowski Primary to go into default.

4. The debtor continued to reside in the property for free as a squatter without paying monthly rent that was due, on or about _1st of each month, debtor was given notice to vacate twice, he refused and instead threatened to contest any legal action taken by Baranowski to pay rent since around 12/2022. On or before 8/23 Baranowski went back home with police escort Taurean would not let her in In 10/2023 Baranowski hired a Real Estate agent to sell the house to pay her financial obligations, the Wrights intentionally were uncooperative, never available to show the property to prospective buyers, jeopardizing Baranowski's ability to sell the house.

5  12/2023 debtor had waited for an eventual foreclosure date on the 2nd note owed by Jean Baranowski, contacted the owner of the 2nd note. Wright satisfied the 2nd note by payment of $295,000 through the foreclosure Sale to avoid paying his financial accrued rent and creditors obligations owed to Baranowski.

That foreclosure sale tile and legal ownership is being contested, and the case is ongoing in the state court.

6  12./10/024 debtor filed Chapter 13 bankruptcy. The Trustee, aware of possibly alleged fraud filing by debtor, the Trustee recommended Baranowski file a Proof of Claim. The bankruptcy was dismissed schedules not filed timely.

7  3/25/2025 debtor filed yet again another declaration of Chapter 13 Bankruptcy.

Debtor declared that 107 Cachanilla Court was his asset and showed same as an asset of the Bankruptcy Asset Schedule. The debtor also listed the Primary Loan on the 107 Property, in the Schedule Of Debts, erroneously and declared that the 107 Cachanilla Court Primary debt indebtedness is his debt Baranowskis PHH Statement in Baranowskis name Debtor admitted to the Trusee at the creditors meeting  had NO debt on the property **EXHIBIT 2**

8. The Objector, Jean Baranowski, declares that the Debtor intentionally did not list the accrued, unpaid rent on the Schedule of Debt of the Debtor in the Bankruptcy filing.  The

- 2 -

**OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGNAIZATION**

Debtor therefore misled the Trustee by providing false financial information, on his creditors schedule **A/B EXHIBIT 2a**

9. The Debtor did not list the accrued unpaid rent and did not list Jean Baranowski. the landlord, in the bankruptcy filing. Debtor owed Baranowski substantial back rent of $83,915. Debtor's attorney was notified about this omission prior to submitting the required schedules.The Debtor filed false financial information. The Debtor swore to tell the truth and lied, misleading the Trustee due to the above omission

10 Debtor did not list the damages caused to property as a renter.
Exterior and interior changes were made, unlawfully changing the physical structure of the property: exterior roof, walls, garage, casita interior rooms, bathrooms, with an Estimated Cost of $80,000.

11. The Debtor's bankruptcy filing claiming the 107 Cachanilla Court property as an asset clearly constitutes an adverse claim that must be resolved through formal legal proceedings, While the tenants' payoff of the second mortgage may have satisfied that particular debt, it did not transfer any ownership rights on the 107 Cachanilla Court property to the Debtor, only a 2nd note obligation by Baranowski owed to the new 2nd note owner, the Debtor in this Bankruptcy.

12 Property Value overstated:  House was on the market recently, by Taureen. Taureen attempted to sell for $950,000, property could not sell for that price. Last physical appraisal done 8/2023 $835,000 **EXHIBIT 3**

13 Property ownership: The Foreclosure sale of the 2nd is contested. The lawsuit is pending in the state court, title and beneficial ownership issues will be determined. Deutsche Bank, the Investor, knows that the 2nd lien position cannot own the house. Taureen does not own the property rights. Baranowski, the owner owns the first Deed of Trust security interest in Baranowski name. Just because it is in default does not mean her rights can be taken away, as a post lien position ownership is active in Riverside Recorders office instrument #2006-0515643 7/14/2006, **EXHIBIT 4**

14 Baranowski signed $645,000 promissory note and is the responsible party to cure the debt to the loan owner the holder of the note 123757666and to repay the value of the loan. That was Indymac F.S.Bank, under origination registered with Mers Agency. EXHIBIT The loan is in my name only NO THRD PARTY authorized by Baranowski. Debtor attorney added my loan in my name to Debtors Bankruptcy Schedule Of Debts. Placing Baranowski in Bankruptcy Ruining Baranowski credit Harming Baranowski

**DEBTOR'S CHAPTER 13 PLAN CANNOT BE CONFIRMED IT IS NOT FIESABLE**

OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGNAIZATION

1

2

3

4
**WHEREFORE**, Creditor respectfully requests:

5
1. Grant Motion To Vacate Automatic Stay.

6

7
2. Grant Motion to Strike the inclusion of the Primary Loan and homestead on the Schedule Of Debtor Debts. Debtor does not Owen the 107 Cachanilla Court property and is not liable for the Primary Note obligation, which is a debt of the owner, Jean Baranowski.

8

9
3. Grant Motion to Include the Proof of Claim for accrued unpaid rent and damages to the property on the 107 Cachanilla property, said rent debt to be included in the Schedule of Debts of the Debtor's Bankruptcy.

10

11
4. Grant clear title to Petitioner Baranowski, subject to the Primary loan in the name of Jean Baranowski. As for the 2nd note, the case is still ongoing in the state court and the purchase of the 2nd note from its predecessor owner does not convey total home ownership in the 107 Cachanilla Court property, but, only an interest in the 2nd note as an asset of the Debtor.

12

13

14
5. That the Court deny confirmation of the Debtor's Plan.

15
6. For such other and further reliefs as this court deems just and proper.

16
Dated: May 12, 2025

17

18
/S/  Jean Baranowski,
78365 Highway 111 #123
La Quinta , Ca 92253Petitioner

19

20

21

22

23

24

25

26

27

28
- 4 -

**OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGNAIZATION**

DocuSign Envelope ID: 524FA729-A3B1-4380-B79A-A04A09CD45C2

CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LEASE OR
MONTH-TO-MONTH RENTAL AGREEMENT**
(C.A.R. Form LR, Revised 12/19)

Date ___12/10/2020___ , _____ Jean Baranowski _____ ("Landlord") and
___Jermaine and Taurean Wright , Julian Decierdo_____ ("Tenant") agree as follows ("Agreement"):

**1. PROPERTY:**
   **A.** Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: _107 Cachanilla_
   _Ct, Palm Desert, CA  92260-3159_ ("Premises").
   **B.** The Premises are for the sole use as a personal residence by the following named person(s) **only:** _Taurean Wright,_
   _Jermaine Wright, Dioree Wright, Taleia Wright, Xyriah Wright_ .
   **C.** The following personal property, maintained pursuant to paragraph 11, is included: _refrigerator, stove, microwave_
   _____ or ☐ (if checked) the personal property on the attached addendum is included.
   **D.** The Premises may be subject to a local rent control ordinance

**2. TERM:** The term begins on (date) __February 1, 2021__ ("Commencement Date"). If Tenant has not paid all amounts then due;
   **(i)** Tenant has no right to possession or keys to the premises and; **(ii)** this Agreement is voidable at the option of Landlord, 2 calendar
   days after giving Tenant a Notice to Pay (C.A.R. Form PPN).  Notice may be delivered to Tenant **(i)** in person; **(ii)** by mail to Tenant's
   last known address; or **(iii)** by email, if provided in Tenant's application or previously used by Tenant to communicate with Landlord or
   agent for Owner. If Landlord elects to void the lease, Landlord shall refund to Tenant all rent and security deposit paid.
   **(Check A or B):**
   ☐ **A.  Month-to-Month:** This Agreement continues from the commencement date as a month-to-month tenancy. Tenant may
      terminate the tenancy by giving written notice at least 30 days prior to the intended termination date. Tenant shall be
      responsible for paying rent through the termination date even if moving out early. Landlord may terminate the tenancy by
      giving written notice as provided by law. Such notices may be given on any date.
   ☒ **B.  Lease:** This Agreement shall terminate on (date) __February 1, 2022__ at ___5:00___ ☐ AM/ ☒ PM. Tenant
      shall vacate the Premises upon termination of the Agreement, unless: **(i)** Landlord and Tenant have extended this
      Agreement in writing or signed a new agreement; **(ii)** mandated by any rent increase cap or just cause eviction control under
      any state or local law; or **(iii)** Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month
      tenancy shall be created which either party may terminate as specified in paragraph 2A. Rent shall be at a rate agreed to by
      Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full force and
      effect.

**3. RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit.
   **A.** Tenant agrees to pay _$2,800.00_ per month for the term of the Agreement.
   **B.** Rent is payable in advance on the **1st (or** ☐ _____ **) day** of each calendar month, and is delinquent on the next day.
   **C.** If Commencement Date falls on any day other than the day Rent is payable under paragraph 3B, and Tenant has paid one full
      month's Rent in  advance of Commencement Date, Rent for the second calendar month shall be prorated and Tenant shall pay
      1/30th of the monthly rent per day for each day remaining in the prorated second month.
   **D. PAYMENT: (1)** Rent shall be paid by ☐ personal check, ☐ money order, ☐ cashier's check, made payable to _Jean_
      _Baranowski_ , ☐ wire/electronic transfer, or ☒ other _bank transfer to account_ .
      **(2)** Rent shall be delivered  to (name) _____
      (whose phone number is) _____ at (address) _____
      _____, (or at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if
      checked, rent may be paid personally, between the hours of _____ and _____ on the following days _____).
      **(3)** If any payment is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: **(i)** Landlord may, in
      writing, require Tenant to pay Rent in cash for three months and **(ii)** all future Rent shall be paid by ☐ money order, or ☐ cashier's check.
   **E.** Rent payments received by Landlord shall be applied to the earliest amount(s) due or past due.

**4. SECURITY DEPOSIT:**
   **A.** Tenant agrees to pay $2,800.00 _____ as a security deposit. Security deposit will be ☒ transferred to and held by the
      Owner of the Premises, or ☐ held in Owner's Broker's trust account.
   **B.** All or any portion of the security deposit may be used, as reasonably necessary, to: **(i)** cure Tenant's default in payment of Rent (which
      includes Late Charges, NSF fees or other sums due); **(ii)** repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest,
      invitee or licensee of Tenant; **(iii)** clean Premises, if necessary, upon termination of the tenancy; and **(iv)** replace or return personal property
      or appurtenances. **SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT.** If all or
      any portion of the security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within five days after written
      notice is delivered to Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: **(1)** furnish Tenant an itemized statement
      indicating the amount of any security deposit received and the basis for its disposition and supporting documentation as required by
      California Civil Code § 1950.5(g); and **(2)** return any remaining portion of the security deposit to Tenant.
   **C. Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned.** Any security
      deposit returned by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
   **D.** No interest will be paid on security deposit unless required by local law.
   **E.** If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in
      Owner's Broker's trust account, **and** Broker's authority is terminated before expiration of this Agreement, **and** security deposit is
      released to someone other than Tenant, **then** Broker shall notify Tenant, in writing, where and to whom security deposit has been
      released. Once Tenant has been provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

Tenant's Initials X(_____) X(_____)                        Landlord's Initials ( ___ ) ( ___ )

© 2019, California Association of REALTORS®, Inc.
**LR REVISED 12/19 (PAGE 1 OF 8)**     (2-8 TO FOLLOW)

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 8)**     107 Cachanilla Ct

Harcourts Desert Homes, 119 N Indian Canyon Drive Palm Springs CA 92262            Phone: (760)442-7799    Fax:
Jermaine Wright                        Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com



EXHIBIT(1)

Premises: *107 Cachanilla Ct, Palm Desert, CA  92260-3159* _____ Date: *12/10/2020*

☐ **D.** Tenant will provide Landlord a list of items that are damaged or not in operable condition within **3 (or ☐ _____ ) days** after Commencement Date, not as a contingency of this Agreement but rather as an acknowledgement of the condition of the Premises.

☐ **E.** Other: _____ .

## 11. MAINTENANCE USE AND REPORTING:

**A.** Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, carbon monoxide detector(s) and smoke alarms, and keep them and the Premises clean, sanitary and well ventilated. Tenant shall be responsible for checking and maintaining all carbon monoxide detectors and any additional phone lines beyond the one line and jack that Landlord shall provide and maintain. Tenant shall replace any burned out or malfunctioning light bulbs. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage with any item including carbon monoxide detector(s) and smoke alarms on the property. Tenant shall be charged for all repairs or replacements caused by Tenant, pets, guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

**B.** ☒ Landlord ☐ Tenant shall water the garden, landscaping, trees and shrubs, except: _____
_____ .

**C.** ☒ Landlord ☐ Tenant shall maintain the garden, landscaping, trees and shrubs, except: _____
_____ .

**D.** ☒ Landlord ☐ Tenant shall maintain _____

**E.** Landlord and Tenant agree that State or local water use restrictions shall supersede any obligation of Landlord or Tenant to water or maintain any garden, landscaping, trees or shrubs pursuant to 11B, 11C, and 11D.

**F.** Tenant's failure to maintain any item for which Tenant is responsible shall give Landlord the right to hire someone to perform such maintenance and charge Tenant to cover the cost of such maintenance.

**G.** The following items of personal property are included in the Premises without warranty and Landlord will not maintain, repair or replace them: _____ .

**H.** Tenant understands that if Premises is located in a Common Interest Development, Landlord may not have authority or control over certain parts of the Premises such as roof, electrical, gas or plumbing features inside certain walls, and common areas such as shared parking structure or garage.

**I.** Tenant shall not use the premises to plant, grow, cultivate or sell marijuana.

## 12. NEIGHBORHOOD CONDITIONS:
Tenant is advised to satisfy himself or herself as to neighborhood or area conditions, including, but not limited to, schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Tenant.

## 13. PETS:
Unless otherwise provided in California Civil Code §54.2, or other law, no animal or pet shall be kept on or about the Premises without Landlord's prior written consent, ☐ except as agreed to in the attached Pet Addendum (C.A.R. Form PET).

## 14. SMOKING:

**A.** **(i)** Tenant is responsible for all damage caused by smoking including, but not limited to stains, burns, odors and removal of debris; **(ii)** Tenant acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire premises regardless of when these items  were last cleaned, replaced or repainted. Such actions and other necessary steps will impact the return of any security deposit.

**B.** The Premises or common areas may be subject to a local non-smoking ordinance.

**C.** NO SMOKING of any substance is allowed on the Premises or common areas. If smoking does occur on the Premises or common areas, **(i)** Tenant is in material breach of this Agreement; **(ii)** Tenant, guests, and all others may be required to leave the Premises. ☐ Smoking of the following substances only is allowed: _____ .

## 15. RULES/REGULATIONS:

**A.** Tenant agrees to comply with all Landlord rules and regulations that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests, invitees, and licensees of Tenant shall not, disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, under federal, state, or local law including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

**B. (If applicable, check one)**

☒ **1.** Landlord shall provide Tenant with a copy of the rules and regulations within _____ **days**
    or _____ .

OR ☐ **2.** Tenant has been provided with, and acknowledges receipt of, a copy of the rules and regulations.

## 16. ☒ (If checked) CONDOMINIUM; PLANNED UNIT DEVELOPMENT:

**A.** The Premises are a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners' association ("HOA"). The name of the HOA is _____ . Tenant agrees to comply with all HOA covenants, conditions and restrictions, bylaws, rules and regulations and decisions ("HOA Rules"). Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant or Landlord shall have the right to deduct such amounts from the security deposit.

Tenant's Initials X( *BO* ) X( *O* )          Landlord's Initials ( *VP* ) ( )

**LR REVISED 12/19 (LR PAGE 3 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 3 OF 8)**

(EXHIBIT 1A)

Premises: *107 Cachanilla Ct, Palm Desert, CA 92260-3159*                                                                 Date: *12/10/2020*

**5. MOVE-IN COSTS RECEIVED/DUE:** Move-in funds shall be paid by ☒ personal check, ☒ money order, or ☒ cashier's check, ☒ wire/ electronic transfer.

| Category | Total Due | Payment Received | Balance Due | Date Due | Payable To |
|---|---|---|---|---|---|
| Rent from *02/01/2021* to *02/28/2021* (date) | *$2,800.00* | | *$2,800.00* | *02/01/2021* | *Jean Baranowski* |
| *Security Deposit | *$2,800.00* | *$500.00* | *$2,300.00* | *12/09/2020* | *Jean Baranowski* |
| Other | | *$2,300.00* | *$(2,300.00)* | *12/10/2020* | *Jean Baranowski* |
| Other | | | | | *Jean Baranowski* |
| Total | *$5,600.00* | *$2,800.00* | *$2,800.00* | | |

*The maximum amount of security deposit, however designated, cannot exceed two months' Rent for an unfurnished premises, or three months' Rent for a furnished premises.

**6. LATE CHARGE; RETURNED CHECKS:**
   **A.** Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 (or ☐ _____ ) calendar days after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of $ _____ or *5.000* % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.
   **B.** Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall neither be deemed an extension of the date Rent is due under paragraph 3 nor prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

**7. PARKING: (Check A or B)**
☒ **A.** Parking is permitted as follows: *Parking spot*                                                                                                              .

The right to parking ☐ is ☐ is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used only for parking properly registered and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work, or storage of inoperable vehicles, or storage of any kind is not permitted in parking space(s) or elsewhere on the Premises except as specified in paragraph 8.
OR☐ **B.** Parking is not permitted on the real property of which the Premises is a part.

**8. STORAGE: (Check A or B)**
☐ **A.** Storage is permitted as follows: _____
The right to separate storage space ☐ is, ☐ is not, included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $ _____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.
OR☐ **B.** Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises.

**9. UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: *Electric, Gas, pool and gardener* , except _____ *Water, trash and HOA* _____, which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.
   ☐ **A. Water Submeters:** Water use on the Premises is measured by a submeter and Tenant will be separately billed for water usage based on the submeter. See attached Water Submeter Addendum (C.A.R. Form WSM) for additional terms.
   ☐ **B. Gas Meter:** The Premises does not have a separate gas meter.
   ☐ **C. Electric Meter:** The Premises does not have a separate electrical meter.

**10. CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke alarm(s) and carbon monoxide detector(s).
   **(Check all that apply):**
   ☐ **A.** Tenant acknowledges these items are clean and in operable condition, with the following exceptions: _____
                                                                                                                                                              .
   ☐ **B.** Tenant's acknowledgment of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).
   ☒ **C. (i)** Landlord will Deliver to Tenant a statement of condition (C.A.R. Form MIMO) ☐ within **3 days** after execution of this Agreement; ☐ prior to the Commencement Date; ☐ within **3 days** after the Commencement Date.
   **(ii)** Tenant shall complete and return the MIMO to Landlord within 3 (or ☐ _____ ) days after Delivery. Tenant's failure to return the MIMO within that time shall conclusively be deemed Tenant's Acknowledgment of the condition as stated in the MIMO.

Tenant's Initials X(_____) X(_____)                                                     Landlord's Initials (_____) (_____)

**LR REVISED 12/19 (PAGE 2 OF 8)**

EXB-1 B

DocuSign Envelope ID: 82E5A78A-A3D7-453E-89E9-A04B0652514A

Premises: 107 Cachanilla Ct, Palm Desert, CA 92260-3159 _____ Date: 12/10/2020

B. If applicable, Tenant is required to pay a fee to the HOA to gain access to certain areas within the development such as but not necessarily including or limited to the front gate, pool, and recreational facilities. If not specified in paragraph 5, Tenant is solely responsible for payment and satisfying any HOA requirements prior to or upon or after the Commencement Date.

C. **(Check one)**
   ☒ 1. Landlord shall provide Tenant with a copy of the HOA Rules within _____ days
   or _____ .
   OR☐ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the HOA Rules.

17. **ALTERATIONS; REPAIRS:** Unless otherwise specified by law or paragraph 25C, without Landlord's prior written consent, **(i)** Tenant shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials; **(ii)** Landlord shall not be responsible for the costs of alterations or repairs made by Tenant; **(iii)** Tenant shall not deduct from Rent the costs of any repairs, alterations or improvements; and **(iv)** any deduction made by Tenant shall be considered unpaid Rent.

18. **KEYS; LOCKS:**
   A. Tenant acknowledges receipt of (or Tenant will receive ☐ prior to the Commencement Date, or ☐ _____ ):
      ☒ 3 ____ key(s) to Premises, ☒ 2 ____ remote control device(s) for garage door/gate opener(s),
      ☒ 1 ____ key(s) to mailbox, _____ ,
      ____ key(s) to common area(s), _____ .
   B. Tenant acknowledges that locks to the Premises ☐ have, ☐ have not, been re-keyed.
   C. If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

19. **ENTRY:**
   A. Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs (including, but not limited to, installing, repairing, testing, and maintaining smoke detectors and carbon monoxide devices, and bracing, anchoring or strapping water heaters, or repairing dilapidation relating to the presence of mold); providing decorations, alterations, or improvements; or supplying necessary or agreed services; or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, contractors and others (collectively "Interested Persons"). Tenant agrees that Landlord, Broker and Interested Persons may take photos of the Premises.
   B. Landlord and Tenant agree that 24-hour written notice shall be reasonable and sufficient notice, except as follows: (1) 48-hour written notice is required to conduct an inspection of the Premises prior to the Tenant moving out, unless the Tenant waives the right to such notice. (2) If Landlord has in writing informed Tenant that the Premises are for sale and that Tenant will be notified orally to show the premises (C.A.R. Form NSE), then, for the next 120 days following the delivery of the NSE, notice may be given orally to show the Premises to actual or prospective purchasers. (3) No written notice is required if Landlord and Tenant orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement. (4) No notice is required: **(i)** to enter in case of an emergency; **(ii)** if the Tenant is present and consents at the time of entry; or **(iii)** if the Tenant has abandoned or surrendered the Premises.
   C. ☐ (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/lockbox addendum (C.A.R. Form KLA).

20. **PHOTOGRAPHS AND INTERNET ADVERTISING:**
   A. In order to effectively market the Premises for sale or rental it is often necessary to provide photographs, virtual tours and other media to Interested Persons. Tenant agrees that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Premises ("Images") for static and/or virtual tours of the Premises by Interested Persons for use on Broker's website, the MLS, and other marketing materials and sites. Tenant acknowledges that once Images are placed on the Internet neither Broker nor Landlord has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet.
   B. Tenant acknowledges that prospective Interested Persons coming onto the Premises may take photographs, videos or other images of the Premises. Tenant understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken or put into electronic display on the Internet or otherwise, neither Broker nor Landlord has control over who views such Images nor what use viewers may make of the Images.

21. **SIGNS:** Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

22. **ASSIGNMENT; SUBLETTING: A.** Tenant shall not sublet all or any part of Premises, or parking or storage spaces, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Agreement. **B.** This prohibition also applies ( ☐ does not apply) to short term, vacation, and transient rentals such as, but not limited to, those arranged through AirBnB, VRBO, HomeAway or other short term rental services. **C.** Any violation of this prohibition is a non-curable, material breach of this Agreement.

23. **JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

24. **POSSESSION:**
   A. (1) Tenant is not in possession of the Premises. If Landlord is unable to deliver possession of Premises on Commencement

Tenant's Initials X( ) X( )       Landlord's Initials ( ) ( )

**LR REVISED 12/19 (PAGE 4 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 4 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com     107 Cachanilla Ct

EXHIBIT C

DocuSign Envelope ID: 522FA726-A3B7-439B-B79B-A040C0C6425

Premises: *107 Cachanilla Ct, Palm Desert, CA  92260-3159*    Date: *12/10/2020*

Date, such Date shall be extended to the date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 (or ☐ _____ ) **calendar days** after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid.

or (2) Possession is deemed terminated when Tenant has returned all keys to the Premises to Landlord.

B. ☐ Tenant is already in possession of the Premises.

**25. TENANT'S OBLIGATIONS UPON VACATING PREMISES:**

A. Upon termination of this Agreement, Tenant shall: **(i)** give Landlord all copies of all keys and any opening devices to Premises, including any common areas; **(ii)** vacate and surrender Premises to Landlord, empty of all persons; and personal property belonging to Tenant **(iii)** vacate any/all parking and/or storage space; **(iv)** clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; **(v)** remove all debris; **(vi)** give written notice to Landlord of Tenant's forwarding address; and **(vii)** _____ .

B. All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.

C. **Right to Pre-Move-Out Inspection and Repairs: (i)** After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the expiration of this Agreement, Tenant has the right to request that an inspection of the Premises take place prior to termination of the lease or rental (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. **(ii)** Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. **(iii)** Tenant shall: **(a)** obtain receipts for Repairs performed by others; **(b)** prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and **(c)** provide copies of receipts and statements to Landlord prior to termination. Paragraph 25C does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3), or (4).

**26. BREACH OF CONTRACT; EARLY TERMINATION:** In addition to any obligations established by paragraph 25, in the event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

**27. TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

**28. DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

**29. INSURANCE: A.** Tenant's, guest's, invitees or licensee's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. **Tenant is advised to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss or damage. B.** Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: **(i)** an increase in Landlord's insurance premium (or Tenant shall pay for the increase in premium); or **(ii)** loss of insurance. **C.** ☐ Tenant shall obtain liability insurance, in an amount not less than $_____, naming Landlord and, if applicable, Property Manager as additional insured for injury or damage to, or upon, the Premises during the term of this agreement or any extension. Tenant shall provide Landlord a copy of the insurance policy before commencement of this Agreement, and a rider prior to any renewal.

**30. WATERBEDS/PORTABLE WASHERS:** Tenant shall not use or have waterbeds on the Premises unless: **(i)** Tenant obtains a valid waterbed insurance policy; **(ii)** Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and **(iii)** the bed conforms to the floor load capacity of Premises. Tenant shall not use on the Premises ☐ Portable Dishwasher ☐ Portable Washing Machine.

**31. WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

**32 NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:

| Landlord: *Jean Baranowski* | Tenant: *Jermaine and Taurean Wright* |
|---|---|
| *107 Cachanilla Ct* | *107 Cachanilla* |
| *Palm Desert ,CA92260-3159* | *Palm Desert Ca 92260* |

Tenant's Initials X( _8 ð_ ) X( _ð_ )       Landlord's Initials ( _JB_ ) ( _____ )

**LR REVISED 12/19 (PAGE 5 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 5 OF 8)**

EXHIBIT (1D)

Premises: *107 Cachanilla Ct, Palm Desert, CA  92260-3159* _____ Date: *12/10/2020*

**33. TENANT ESTOPPEL CERTIFICATE:** Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within **3 days** after its receipt (C.A.R. Form TEC). Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

**34. REPRESENTATION**

    **A. TENANT REPRESENTATION; OBLIGATIONS REGARDING OCCUPANTS; CREDIT:** Tenant warrants that all statements in Tenant's rental application are accurate. Landlord requires all occupants 18 years of age or older and all emancipated minors to complete a lease rental application. Tenant acknowledges this requirement and agrees to notify Landlord when any occupant of the Premises reaches the age of 18 or becomes an emancipated minor. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report periodically during the tenancy in connection with the modification or enforcement of this Agreement. Landlord may cancel this Agreement: **(i)** before occupancy begins; upon disapproval of the credit report(s), or upon discovering that information in Tenant's application is false; **(ii)** After commencement date, upon disapproval of an updated credit report or upon discovering that information in Tenant's application is no longer true. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.

    **B. LANDLORD REPRESENTATIONS:** Landlord warrants that, unless otherwise specified in writing, Landlord is unaware of **(i)** any recorded Notices of Default affecting the Premise; **(ii)** any delinquent amounts due under any loan secured by the Premises; and **(iii)** any bankruptcy proceeding affecting the Premises.

**35. MEDIATION:**

    **A.** Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.

    **B.** The following matters are excluded from mediation: **(i)** an unlawful detainer action; **(ii)** the filing or enforcement of a mechanic's lien; and **(iii)** any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.

    **C.** Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to this Agreement.

**36. ATTORNEY FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs, collectively not to exceed $1,000 (or $_____), except as provided in paragraph 35A.

**37. C.A.R. FORM:** C.A.R. Form means the specific form referenced or another comparable form agreed to by the parties.

**38. STATUTORY DISCLOSURES:**

    **A.** ☐ **LEAD-BASED PAINT (If checked):** Premises were constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form FLD) and a federally approved lead pamphlet.

    **B. PERIODIC PEST CONTROL (CHECK IF EITHER APPLIES):**

        **1.** ☐ Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.

        **2.** ☐ Premises is a house. Tenant is responsible for periodic pest control treatment.

    **C.** ☐ **METHAMPHETAMINE CONTAMINATION:** Prior to signing this Agreement, Landlord has given Tenant a notice that a health official has issued an order prohibiting occupancy of the property because of methamphetamine contamination. A copy of the notice and order are attached.

    **D. BED BUGS:** Landlord has no knowledge of any infestation in the Premises by bed bugs. See attached Bed Bug Disclosure (C.A.R. Form BBD) for further information. Tenant shall report suspected bed bug infestation to Landlord or, if applicable, property manager and cooperate with any inspection for and treatment of bed bugs. Landlord will notify tenants of any units infested by bed bugs.

    **E. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Landlord nor Brokers, if any, are required to check this website. If Tenant wants further information, Tenant should obtain information directly from this website.)

    **F.** ☐ **RESIDENTIAL ENVIRONMENTAL HAZARDS BOOKLET:** Tenant acknowledges receipt of the residential environmental hazards booklet.

    **G.** ☐ **MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises are located within one mile of an area once used for military training, and may contain potentially explosive munitions.

    **H. FLOOD HAZARD DISCLOSURE:** Flooding has the potential to cause significant damage to personal property owned by Tenant. See attached Tenant Flood Hazard Disclosure (C.A.R. Form TFHD) for additional information.

**39. SERVICEMEMBERS CIVIL RELIEF ACT:** Notwithstanding anything to the contrary in paragraphs 2, 4, 26 or elsewhere in this Agreement, the Servicemembers Civil Relief Act applies to this Agreement and any effort to terminate it, as specified in Sections 3951 and 3955 of the Act.

**40. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement

Tenant's Initials X_____ ) X_____ )         Landlord's Initials ( _____ ) ( _____ )

**LR REVISED 12/19 (PAGE 6 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 6 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com    107 Cachanilla Ct

EXHIBIT 1 E

Premises: _107 Cachanilla Ct, Palm Desert, CA  92260-3159_ Date: _12/10/2020_

with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

**41. AGENCY:**

    **A. CONFIRMATION:** The following agency relationship(s) are confirmed for this transaction:

        Landlord's Brokerage Firm _____ License Number _____

        Is the broker of (check one): ☐ the Landlord; or ☐ both the Tenant and Landlord. (Dual Agent).

        Landlord's Agent _____ _Jermaine Wright_ _____ License Number _02083299_

        Is (check one): ☐ the Landlord's Agent. (salesperson or broker associate) ☐ both the Tenant's and Landlord's Agent. (Dual Agent)

        Tenant's Brokerage Firm _____ _Harcourts Desert Homes_ _____ License Number _____

        Is the broker of (check one): ☐ the Tenant; or ☐ both the Tenant and Landlord. (Dual Agent)

        Tenant's Agent _____ _Jermaine Wright_ _____ License Number _____

        Is (check one): ☐ the Tenant's Agent. (salesperson or broker associate) ☐ both the Tenant's and Landlord's Agent. (Dual Agent)

    **B. DISCLOSURE:** ☐ (If checked): The term of this Agreement exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt.

**42.** ☐ **TENANT COMPENSATION TO BROKER:** Upon execution of this Agreement, Tenant agrees to pay compensation to Broker as specified in a separate written agreement between Tenant and Broker.

**43. NOTICE OF RIGHT TO RECEIVE FOREIGN LANGUAGE TRANSLATION OF LEASE/RENTAL AGREEMENTS:** California Civil Code requires a landlord or property manager to provide a tenant with a foreign language translation copy of a lease or rental agreement if the agreement was negotiated primarily in Spanish, Chinese, Korean, Tagalog or Vietnamese. If applicable, every item of the lease/rental needs to be translated except for, among others, names, dollar amounts and dates written as numerals, and words with no generally accepted non-English translation.

**44. OWNER COMPENSATION TO BROKER:** Upon execution of this Agreement, Owner agrees to pay compensation to Broker as specified in a separate written agreement between Owner and Broker (C.A.R. Form LL or LCA).

**45. RECEIPT:** If specified in paragraph 5, Landlord or Broker, acknowledges receipt of move-in funds.

**46. OTHER TERMS AND CONDITIONS:** If checked, the following ATTACHED documents are incorporated in this Agreement:

    ☐ Keysafe/Lockbox Addendum (C.A.R. Form KLA); ☐ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form FLD);

    ☐ Lease/Rental Mold and Ventilation Addendum (C.A.R. Form LRM); ☐ Landlord in Default Addendum (C.A.R. Form LID)

    ☒ Bed Bug Disclosure (C.A.R. Form BBD); ☒ Tenant Flood Hazard Disclosure (C.A.R. Form TFHD)

    ☒ Rent Cap and Just Cause Addendum (C.A.R. Form RCJC)

    Other: _____

    _____

    _____

**47. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 50 or 51 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity **(i)** represents that the entity for which that party is acting already exists and **(ii)** shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

Landlord and Tenant acknowledge and agree Brokers: **(a)** do not guarantee the condition of the Premises; **(b)** cannot verify representations made by others; **(c)** cannot provide legal or tax advice; **(d)** will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: **(e)** do not decide what rental rate a Tenant should pay or Landlord should accept; and **(f)** do not decide upon the length or other terms of this Agreement. Landlord and Tenant agree that they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

**48.** ☐ **INTERPRETER/TRANSLATOR:** The terms of this Agreement have been interpreted for Tenant into the following language: _____. Landlord and Tenant acknowledge receipt of the attached interpreter/translator agreement (C.A.R. Form ITA).

**49.** The Premises is being managed by Owner, (or, if checked):

    ☐ Listing firm in box below ☐ Leasing firm in box below ☐ Property Management firm immediately below

    Real Estate Broker (Property Manager) _____ DRE Lic # _____

    By (Agent) _____ DRE Lic # _____

    Address _____ Telephone # _____

Tenant's Initials X( ) X( )        Landlord's Initials ( ) ( )

**LR REVISED 12/19 (PAGE 7 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 7 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com    107 Cachanilla Ct

EXHIBIT 1 F

Premises: *107 Cachanilla Ct, Palm Desert, CA  92260-3159* _____ Date: *12/10/2020*

**50. Tenant agrees to rent the Premises on the above terms and conditions.**
☐ One or more Tenants is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached
Representative Capacity Signature Disclosure (For Tenant Representative) (C.A.R. Form RCSD-T) for additional terms.

Tenant  X _____ Date 12/10/2020
Print Name *Jermaine and Taurean Wright*
Address _____ City _____ State _____ Zip _____
Telephone *(760)442-7799* _____ Fax _____ E-mail *leiajermaine@gmail.com* _____
Tenant  X _____ Date 12/10/2020
Print Name *Juliah Decierdo*
Address _____ City _____ State _____ Zip _____
Telephone *(760)219-2629* _____ Fax _____ E-mail *leiajermaine@gmail.com* _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

☐ **GUARANTEE:** In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable
consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: **(i)** guarantee
unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that
become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement;
**(ii)** consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and **(iii)**
waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this
Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____
Guarantor _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

**51. Landlord (owner or ☐ agent for owner) agrees to rent the Premises on the above terms and conditions.**
☐ One or more Landlords is signing this Agreement in a representative capacity and not for him/herself as an individual.  See attached
Representative Capacity Signature Disclosure (For Landlord Representative) (C.A.R. Form RCSD-LL) for additional terms.

Landlord _____ Date _____ Landlord _____ Date _____
   *Jean Baranowski*
Address *107 Cachanilla Ct, Palm Desert, CA  92260-3159*
Telephone *(760)485-6499* _____ Fax _____ E-mail *support@moneywiser.com* _____

---

**REAL ESTATE BROKERS:**
**A.** Real estate brokers who are not also Landlord under this Agreement are not parties to the Agreement between Landlord and Tenant.
**B.** Agency relationships are confirmed in paragraph 41.
**C. COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Leasing Firm) and Cooperating
Broker agrees to accept: **(i)** the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the
Property is offered for sale or lease or a reciprocal MLS; or **(ii)** ☐ (if checked) the amount specified in a separate written agreement
between Listing Broker and Cooperating Broker.

Real Estate Broker (Leasing Firm) *Harcourts Desert Homes* _____ DRE Lic. # _____
By (Agent) _____ *Jermaine Wright* DRE Lic. # _____ Date _____
Address _____ City _____ State *CA* Zip _____
Telephone *(760)442-7799* _____ Fax _____ E-mail *leiajermaine@gmail.com* _____

Real Estate Broker (Listing Firm) _____ DRE Lic. # _____
By (Agent) _____ *Jermaine Wright* DRE Lic. # *02083299* Date _____
Address _____ City _____ State _____ Zip _____
Telephone *(760)442-7799* _____ Fax _____ E-mail *leiajermaine@gmail.com* _____

---

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this
form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify
the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS®
who subscribe to its Code of Ethics.

RE | L
BS | L
   | S | C
Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**LR REVISED 12/19 (PAGE 8 OF 8)**
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 8 OF 8)**



EXHIBIT I

Exhibit 2

# MORTGAGE

PHH Mortgage Services | PO BOX 24738
West Palm Beach FL 33416

2/19/25 11:04 AM 316 0144596 20250219 29657125 I041 1 oz DOM 2965710000 I041 PHMS

JEAN BARANOWSKI
78365 HIGHWAY 111 PMB 12
LA QUINTA CA 92253-2071

To obtain information about your account:
Visit: www.PHHMortgage.com
Call toll free: 1-877-744-2506
Email us: CustomerCare@mortgagefamily.com
Fax: 1-856-917-8300
Hours: Monday through Friday 8:00AM to 9:00PM ET
and Saturday 8:00AM to 5:00PM ET

Your monthly mortgage statement dated: February 19, 2025

| | |
|---|---|
| Loan number: | 7192395981 |
| Payment Due Date: | 3/1/2025 |
| **Amount Due:** | **$107,268.55** |

*If payment is received after 3/16/2025, a $132.29 late fee may be charged*

## Account Information

| | |
|---|---|
| Property Address | 107 CACHANILLA CT PALM DESERT, CA 92260-3159 |
| Outstanding Balance (not payoff amount) | $568,342.60 |
| Principal Balance (interest bearing) | $511,594.78 |
| Deferred Balance (non-interest bearing) | $56,748.02 |
| Current Interest Rate | 3.7500 % |
| Prepayment Penalty | No |
| Escrow Balance | -$29,993.50 |
| Suspense Balance | $0.00 |
| Maturity Date | 10/1/2036 |

## Explanation of Amount Due

| | |
|---|---|
| Total New Fees and Charges | $30.00 |
| Outstanding Unpaid Late Charges, Returned Item Charges, Shortages and Other Fees | $398.31 |
| Assessed Expenses | $7,381.94 |
| Past Due Payment(s) | $99,458.30 |
| Total Amount Due as of 2/18/2025 | $107,268.55 |
| Accelerated Amount (not a payoff amount) | $650,482.12 |

## Past Payments Breakdown

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Optional Products | $0.00 | $0.00 |
| Partial Payment (Unapplied)* | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

## Important Messages

The account is presently due for the 12/1/2022 payment.
Your last full payment was applied to the payment due 11/01/2022.
*Partial Payments: If the account is presently past due, any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
Please note that this is not the payoff quote and any amount less than the payoff quote will be returned. Please contact us for payoff quote.

## Transaction Activity

| Posted Date | Received/ Credited Date | Description | Principal ($) | Interest ($) | Escrow ($) | Late Charges, Shortages & Fees ($) | Suspense & Other ($) | Optional Products ($) | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| 02/05 | | Payoff Quote Fee Assessed | $0.00 | $0.00 | $0.00 | -$30.00 | $0.00 | $0.00 | $0.00 |

Important Information

Please note your loan has been referred to an attorney to start foreclosure proceedings. Prior to remitting payment you MUST contact the attorney for the full reinstatement amount as the amount above may have changed. If you need information regarding the attorney assigned to your loan please contact customer service at 866-947-7729.

If you have been approved for a loss mitigation workout program, please refer to your agreement for payment details.

1 of 3

Complete this coupon; tear it off and return it with your check. Please write your loan number on your check and make it payable to PHH Mortgage Services.

Loan Number : 7192395981
JEAN BARANOWSKI

| | |
|---|---|
| Payment Due Date | 3/1/2025 |
| Total New Fees and Charges | $30.00 |
| Outstanding Unpaid Late Charges, Returned Item Charges, Shortages and Other Fees | $398.31 |
| Assessed Expenses | $7,381.94 |
| Past Due Payments | $99,458.30 |
| Total Amount Due as of 2/18/2025 | $107,268.55 |
| Accelerated Amount (not a payoff amount) | $650,482.12 |

If you're paying more than the amount due, please tell us where you want us to apply the extra amount. If we do not receive your instructions, we'll apply the extra amount first to unpaid late charges and then to principal.

| | |
|---|---|
| Extra Principal | $_______ |
| Extra escrow | $_______ |
| Unpaid late charges | $_______ |
| Other (specify) ______ | $_______ |
| Total check enclosed | $_______ |

PHH Mortgage Services
PO BOX 660093
DALLAS TX 75266-0093

99 954 7192395981 0000402040 0000388811 4

| Debtor 1 | Taurean | E | Wright | Case number (if known) | 6:25-bk-11843-SY |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| | | | Column A | Column B | Column C |
|---|---|---|---|---|---|
| | | | Amount of claim | Value of collateral that supports this claim | Unsecured portion |

**Part 1:**  **Additional Page**

After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth.

Column A — Amount of claim — Do not deduct the value of collateral.

Column B — Value of collateral that supports this claim

Column C — Unsecured portion — If any

---

**2.2  PHH Mortgage**

Creditor's Name

**PO Box 371458**

Number      Street

**Pittsburgh, PA 15250-7458**

City      State      ZIP Code

Who owes the debt? Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☑ Check if this claim relates to a community debt

Date debt was incurred

Describe the property that secures the claim:    $650,000.00    $1,100,000.00    $0.00

107 Cachanilla Ct Palm Desert, CA 92260-3159    *SEE STATEMENT*

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Nature of lien. Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset)    _____

Last 4 digits of account number    ___ ___ ___ ___

---

**2.3  SunPower**

Creditor's Name

**PO Box 91910**

Number      Street

**Sioux Falls, SD 57109-1910**

City      State      ZIP Code

Who owes the debt? Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred

Describe the property that secures the claim:    $212,220.00    $0.00    $212,220.00

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Nature of lien. Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset)    _____

Last 4 digits of account number    ___ ___ ___ ___

---

Add the dollar value of your entries in Column A on this page. Write that number here:    $862,220.00

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:    $890,185.00

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page **2** of **2**

EXHIBIT 2 A

⟨ Back to search                          ♡ Save    ⬆ Share    ⊘ Hide    ∘∘∘ More



**For sale**



⊞ See all 2 photos

# $950,000

107 Cachanilla Ct, Palm Desert, CA 92260

*UNABLE TO SELL*

Est.: **$6,143/mo**  Get pre-qualified

| | | |
|---|---|---|
| **4** beds | **4** baths | **3,322** sqft |

🏠 Residential, Single Family Residence          🔨 Built in 2000          📐 0.26 Acres lot

📈 $918,700 Zestimate®          📊 $286/sqft          🤲 $140/mo HOA

## What's special

Are you looking for lots of space? This property is a great family home with an open floor plan and huge corner lot. Private Casita has its own entry and slider to the backyard. Close to schools

*EXHIBIT - 3*



‹   Back to search                                           ♡ Save   ⬆ Share   ⊘ Hide   ooo More

Overview     Facts & features     Market value     Payment calculator     Neighborhood

— Family Residence                  -

🏠 $922,700 Zestimate®          📄 $286/sqft          🤲 $140/mo HOA

# What's special

Are you looking for lots of space? This property is a great family home with an open floor plan and huge corner lot. Private Casita has its own entry and slider to the backyard. Close to schools and shopping.

**31 days** on Zillow     **478** views     **10** saves

Zillow last checked: 19 minutes ago
Listing updated: February 03, 2025 at 04:01pm

Listed by: Jermaine Wright DRE # 02083299 760-442-7799, eXp Realty of Southern California, Inc 888-294-1415

Source: CLAW,  MLS#: 25-490361



# Travel times

EXHIBIT 3A

Recording Requested by
· First American Title Company
Riverside Resale

Recording Requested By:
INDYMAC BANK, F.S.B., C/O DOCUMENT
MANAGEMENT
*[Company Name]*

And When Recorded Mail To:
INDYMAC BANK, F.S.B., C/O DOCUMENT
MANAGEMENT
*[Company Name]*

*[Name of Natural Person]*
HLDG B, 901 E 104TH ST, SUITE 400/500

*[Street Address]*
KANSAS CITY, MO 64131

*[City, State  Zip Code]*

─────────── *[Space Above Th...*

DOC # 2006-0515643
07/14/2006 08:00A Fee:72.00
Page 1 of 22
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
| 1 |  | 1 | 22 | 1 |  |  |  |  |  |
| A | R | L |  |  |  | COPY | LONG | REFUND | NCHG | EXAM |

# DEED OF TRUST

MIN: 100055401237576667

T
TC

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "**Security Instrument**" means this document, which is dated    July 5, 2006 together with all Riders to this document.

(B)    "**Borrower**" is    JEAN BARANOWSKI A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

. Borrower is the trustor under this Security Instrument.

(C)    "**Lender**" is    INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a    Federal Savings Bank    organized and existing under the laws of United States of America    . Lender's address is    155 NORTH LAKE AVENUE, PASADENA, CA 91101

(D)    "**Trustee**" is    FIRST AMERICAN TITLE INSURANCE CO.

(E)    "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 123757666

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 1 of 13

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

EXHIBIT 4

## Assessor-County Clerk-Recorder

Language    Home    cart

Apply Filter(s)

2007-0495552 · DEED OF TRUST    Visited

| Recording Date | Grantor | Grantee | # of Pages |
|---|---|---|---|
| 07/31/2007 08:00 AM | BARANOWSKI JEAN | INDYMAC BANK FSB | 16 |

2007-0264247 · DEED OF TRUST    Visited

| Recording Date | Grantor | Grantee | # of Pages |
|---|---|---|---|
| 04/19/2007 08:00 AM | BARANOWSKI JEAN | WASHINGTON MUTUAL BANK | 8 |

2006-0774014 · DEED OF TRUST    Visited

| Recording Date | Grantor | Grantee | # of Pages |
|---|---|---|---|
| 10/20/2006 08:00 AM | BARANOWSKI JEAN | INDYMAC BANK FSB | 7 |

2006-0515643 · DEED OF TRUST

| Recording Date | Grantor | Grantee (2) | # of Pages |
|---|---|---|---|
| 07/14/2006 08:00 AM | BARANOWSKI JEAN | INDYMAC BANK FSB MORTGAGE ELE… | 22 |

EXHIBIT 4A

jeanh <jeanh@moneywiser.com>                                          3/20/2025 8:26 AM

# URGENT: Fwd: IMPORTANT to Research From Jean Baranowski RE 1st DEED OF TRUST

To research@mortgagefamily.com

**RE: 107 Cachanilla  Court Palm Desert, CA 92260**

**FOR THE RECORD**

**Addendum to my email of 3/18/2025**

2/28/22025 I called and requested a copy of my 7/2006 Deed of Trust with my name on it See attached, what you sent me was not what I requested

3/14/2025 I called the Riverside Country Recorders office verifying Jean Baranowski 7/2006 Deed of Trust

I spoke to Jay in the Riverside County Recorder's office and while we were on the telephone
she did the research and affirmed to me that the recorded Deed of Trust Doc # 2006-0515643 in Jean Baranoski's
name is **ACTIVE** in **Riverside County Recorder** and confirms Jean Baranowski is the legal owner of the
property at 107 Cachanilla  Court Palm Desert, CA 92260

11/2023 having requested a Loan Modification I was denied by Viscal
Viscals letter emailed to me (falsely) claiming I was not the owner I did not own the property

In subsequent communications I again requested a loan modification and each time Deutsche Bank insisted I did
not own the property and therefore could not qualify

It is clear to me Deutsche Banks misrepresentation of the ownership was the key factor in resulting in the
foreclosure

In light of the fact that my ownership has been establish by the Riverside Recorders Office **I request you rescind
the foreclosure to settle the matter**

**Deutsche Bank"s 2023 misrepresentation claiming I am not the owner of the property has created a cause
of action**

I anticipate your written response no later than 3/24/2025

Please email your response and all correspondence to jeanh@moneywiser.com

JEAN BARANOWSKI

---------- Original Message ----------
From: jeanh <jeanh@moneywiser.com>
To: research@mortgagefamily.com
Date: 03/18/2025 11:38 PM EDT
Subject: IMPORTANT to Research From Jean Baranowski RE 1st DEED OF TRUST

**RE: 107 Cachanilla  Court Palm Desert, CA 92260**

**To Add to my email to PHH March 7, 2025**

To reiterate, 7/2006  I signed a Deep of Trust, note and a promissory note **linked** to my Deed of Trust with
lender Indymac in change for money to buy my house at the above address The agreement was the property

EXHIBIT 4 B

ICE Mortgage Technology MERS ServicerID

# Investor

Select borrower type and enter borrower information to see Investor for MIN 1000554-0123757666-7.

Investor for Individual Borrower

Your entries may be either upper or lower case.

Fields marked * are required.

Last Name  BARANOWSKI

SSN ─ ─

By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.

Submit

Investor for Corporation/Non-Person Entity Borrower

Your entries may be either upper or lower case.

Fields marked * are required.

Corporation/Non-Person Entity Name

Taxpayer Identification Number

By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.

Submit

Servicer: Ocwen Loan Servicing, LLC          Phone:(800) 304-9786
West Palm Beach, FL

Investor: Deutsche Bank National Trust Company as Trustee

Close Window

© 2024 MERSCORP Holdings, Inc. All rights reserved.



EXHIBIT AC

## Assessor-County Clerk-Recorder

Language        Home        cart

---

### Name Search - Web

**Individual Names** should be entered **Last First MI** (i.e. Smith James M). For a broader search, use only a last name and first initial.

**Organizational Names** should be entered as they are spelled (i.e. Riverside Bank).

---

Clerk Documents are indexed from Jan 1, 1893 through Feb 21, 2025

Recorder Documents are indexed from Jan 1, 1974 through Mar 12, 2025

| Name | Recording Date Start | Recording Date End |
|------|---------------------|--------------------|
| baranowski jean | 1/1/2006 | 12/31/2007 |

**Document Types**

× deed of trust

Use Advanced Name Searching
([What is this?](#))

---

**Recent searches**          **Clear Selections**    **Search**

---

**Description (1)**

DEED OF TR...    4

**Name (4)**

BARANOWS...    4

---

☐ Showing page 1 of 1 for
4 Total Results

**Name Search - Web**
Name contains
**baranowski jean\*** and
Recording Date is
between **Jan 1, 2006**
and **Dec 31, 2007** and
Document types in
**CONSTRUCTION DEED**
**OF TRUST, DEED OF**
**TRUST, DEED OF**
**TRUST - REINSTATE,**
**DEED OF TRUST -**
**TRANSFER AFFIDAVIT,**
**DEED OF**

🖨 A̲Z̲

EｘHiBiT 4 D

N/A

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RIVERSIDE DIVISION

**IN RE:**

**CASE NO.: 24-17058**
**CHAPTER 13**

**Javier Diaz,**
**Debtor.**

_____/

## REQUEST FOR SERVICE

**PLEASE TAKE NOTICE THAT** the undersigned hereby appears on behalf of Towd
Point Mortgage Trust 2016-2, U.S. Bank National Association as Indenture Trustee ("Secured
Creditor"). Pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, the undersigned
requests all notices given or required to be given and all papers required to be served in this case
to creditors, any creditors committees, and any other parties-in-interest, be sent to and served
upon the undersigned and the following be added to the Court's Master Mailing List:

**ROBERTSON, ANSCHUTZ, SCHNEID & CRANE LLP**
**13010 MORRIS ROAD, SUITE 450**
**ALPHARETTA, GA 30004**

> Robertson, Anschutz, Schneid & Crane LLP
> Attorney for Secured Creditor
> 1 Park Plaza, Suite 600
> Irvine, CA 92614
> Telephone: 470-321-7112
> Facsimile: 404-393-1425

> By: /s/David Coats
>     David Coats
>     Email: dacoats@raslg.com

EXHIBIT 4D

N/A

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 9, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and a true and correct copy has been served via United States Mail to the following:

JAVIER DIAZ
12465 CYPRESS AVE
CHINO, CA 91710

And via electronic mail to:

ROD DANIELSON (TR)
3787 UNIVERSITY AVENUE
RIVERSIDE, CA 92501

UNITED STATES TRUSTEE (RS)
3801 UNIVERSITY AVENUE, SUITE 720
RIVERSIDE, CA 92501

By: /s/ Emily Cheng

EXHIBIT 4 E

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled (specify): OBJECTION TO CONFIRMATION OF DEBTOR' S
CHAPTER 13 PLAN OF REORGANIZATION AND OBJECTION TO ORDER IMPOSING A STAY OR CONTINUING
AUTOMATIC STAY AS TO 107 CACHANILLA COURT, PALM DESERT, CA 92253 SHOWN IN BANKRUPTCY FILING

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

BENJAMIN HESTON    bhestonecf@gmail.com,
benj*** heston@recap; email, lee bk net
NO4/SBANKRUPTCY@JUbilee bk Net
☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) __05/13/2025__, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) __05/13/2025__, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

TAUREAN WRIGHT 107 CACHANILLA COURT, PALM DESERT, CA 92260

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 05/13/2025 | WILLIAM BARANOWSKI | _(signature)_ |
| Date | Printed Name | Signature |